### UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

| | | |
|---|---|---|
| LAUREN FOSTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 6:14-CV-346-Orl-37GJK |
| v. | ) | |
| | ) | |
| CHATTEM, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT CHATTEM, INC.'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Plaintiff Foster and her attorney seek to avail themselves of the considerable power and burden of the federal class action procedure to address her injury-free claim of consumer misrepresentation, predicated on the allegation that Chattem unfairly or deceptively marketed its ACT® Restoring™ Mouthwash ("Act Restoring" or the "Product") by claiming the Product "Rebuilds Tooth Enamel." Plaintiff asserts that this allegedly false claim allowed Chattem to earn a price premium, to the detriment of Plaintiff and the putative class. A federal class action is undoubtedly appropriate to bring relief to injured consumers in certain cases. But this is not such a case. Here, the claim is accurate and Plaintiff suffered no injury. In fact, Plaintiff admits she received exactly what she wanted—a product that fights cavities and freshens breath. And she did not pay more for the product because of the allegedly false claim.

First and foremost, ACT Restoring does in fact "rebuild" tooth enamel. The claim "rebuilds tooth enamel" is a truthful and simple way to characterize the complicated, scientific process by which ACT Restoring repairs soft spots in tooth enamel that lead to cavities and strengthens the surface of teeth. Second, neither Plaintiff nor any other member of the putative

1

class has suffered injury as a result of purchasing the Product. While Plaintiff claims to have been forced to pay a "price premium" as a result of the "rebuilds tooth enamel" claim, she herself testified at deposition that she was not aware of the Product's price when she purchased it, and did not compare its price to that of other products. She cannot now claim to have paid a "price premium." Moreover, ███████████████████████████████████████ ██████████████████████████████████████████ Because ██████ ██████████████████████, the product could not possibly have carried a "price premium" as a result of the claim. Without damages, Plaintiff cannot prove her claim, let alone the claims of her fellow class members. Finally, looking specifically at Rules 23(a) and 23(b), Plaintiff fails to present a case that passes the rigorous analysis required to certify a class.

## FACTUAL BACKGROUND

### I.    Chattem and ACT Restoring

Since 2007, Chattem has marketed and sold ACT Restoring as part of a family of ACT branded mouthwash products it acquired from Johnson & Johnson. (*See* Pl.'s Mot. for Class Certif. Ex. B ("Holloway Dep.") at 98:23-99:1.) For adults, ACT Restoring is generally sold alongside other mouthwash products which include competitors and other ACT products, including ACT Total Care and ACT Anticavity Rinse. Each of these ACT products contains the active ingredient sodium fluoride, a well-recognized anti-cavity. Unlike other ACT products, ACT Restoring contains 11 percent alcohol, which some mouthwash users prefer for a clean mouth feeling. (*Id.* at 94:17-95:2.) In late 2012, as part of an overall brand refresh, Chattem modified its product label for ACT Restoring to the version that appears on store shelves today. (Pl.'s Mot. for Class Certif. [Doc. 47] Ex. A.) Bottles with the new label were first shipped in

December 2012 and began appearing on store shelves in approximately early 2013. The current label contains the "rebuilds tooth enamel" claim.

Like all of Chattem's products, Chattem sells ACT Restoring to wholesalers and large retailers who then distribute the product to individual retail locations where it is sold to the end consumer. (Holloway Dep. at 24:5-12.) Chattem negotiates its price for ACT Restoring with its wholesaler/retailer customers based on its wholesale price list. (*Id.* at 62:8-22.) ████████████ ████████████████████████████████████████████████████████████ ████ (*See id.* at 69:10-15.) In other words, █████████████████████████████ ████████████████████████████████████████████ Chattem's revenue from ACT Restoring is solely derived from Chattem's sale to the wholesaler/retailer and not from later sales to end consumers. (*Id.* at 37:14-20.) Because Chattem does not sell to consumers directly, Chattem cannot identify the consumers who purchased the Product.  Thus, if a purported individual purchaser cannot present a receipt, Chattem would be asked to take that claimed purchaser at his/her word. (*Id.* at 29:13-16.)

## II.    ACT Restoring Rebuilds Tooth Enamel

The phrase "rebuilds tooth enamel" is an accurate and simple way to describe the complicated process by which ACT Restoring "remineralizes" teeth, thereby rebuilding the outer surface layer of teeth. (Expert Report of Domenick T. Zero ("Zero Rpt.") ¶ 16, attached as Exhibit A.) Over time, acid in the mouth can soften the outer surface layer of the tooth enamel. This process is called "demineralization." (Zero Rpt. ¶ 11; Pl.'s Mot. for Class Cert. Ex. D ("Tomar Rpt.") at 1) and is the start of a cavity. (*See* Tomar Rpt. at 1-2.) If demineralization allows acid to get into the deeper subsurface layer of the tooth, the acid can cause white spot

lesions. (Zero Rpt. ¶ 11; Tomar Rpt. at 2.) If the process persists uninterrupted, the enamel outer surface of the tooth will collapse, causing a cavity or "carie." (Zero Rpt. ¶ 11.)

But if sodium fluoride, the active ingredient in ACT Restoring, is introduced before a cavity forms, it can reverse this process and cause remineralization. (Zero Rpt. ¶ 12; Tomar Rpt. at 2.) Fluoride essentially speeds up the growth of a new surface on the partially demineralized subsurface crystals in the caries lesion or cavity. (Tomar Rpt. at 3.) Through remineralization, the enamel surface and subsurface is rebuilt and the strength of the enamel restored. (Zero Rpt. ¶ 12.) Notably, even Plaintiff's expert acknowledges that rebuilding weak spots is possible with remineralization, as do the third-party sources on which Plaintiff relies in her complaint. (*See* Tomar Rpt. at 2; Compl. ¶ 3, n.1, Ronald Perry, *Are "restoring" toothpastes and mouthwashes marketing or medicine*, TuftsNow (Apr. 9, 2012), available at http://now.tufts.edu/articles/restoring-toothpastes-mouthwashes (last visited May 5, 2014).) Fluoride also promotes the formation of a substance called fluorhydroxapatite, which protects the tooth against future acid attacks. (Zero Rpt. ¶ 12; Tomar Rpt. at 3.) In sum, if "fluoride is introduced into the oral environment during the early stages of the caries process . . . the demineralization process can be reversed, the process leading to formation of a cavity can be arrested, and the enamel layer of the tooth becomes stronger and more resistant to future dental caries." (Zero Rpt. ¶ 13.)

### III.    Plaintiff's Purchase of ACT Restoring

Plaintiff did not purchase the Product based on its price or how that price compared to other products. Instead, due to recent problems with cavities, Plaintiff sought an anti-cavity mouthwash – something that would "fight cavities, strengthen my teeth." (Pl.'s Mot. for Class Certif. Ex. E ("Foster Dep.") at 17:6-8; 43:20-25.) This is precisely what she got. After seeing

the Product at her local Wal-Mart and noting that it "rebuilds tooth enamel," Plaintiff purchased the Product. (*Id.* at 24:15-25:10.) Plaintiff did not compare the price to other mouthwashes on the shelves (that day or ever) and does not know exactly how much she paid. (*Id.* at 21:14-20; 27:25-28:2.) She is not price sensitive regarding consumer goods like mouthwash and does not have an opinion as to whether ACT Restoring is appropriately priced. (*Id.* at 16:17-24; 42:11-15.) The presence of alcohol was not important to her, but she acknowledges that a preference for alcohol is an "individual decision." (*Id.* at 59:7-11.)

Plaintiff takes an unreasonably narrow view of the term "rebuilds tooth enamel," claiming to believe the use of this phrase means that ACT Restoring "rebuild[s] the tooth to its original structure." (*Id.* at 30:6-7.) In other words, she claims to have believed that after using ACT Restoring, she would have more tooth enamel – that the Product would replace it. Of course, the claim at issue is that ACT Restoring "rebuilds" enamel, not replaces it.

After speaking with Mr. Eggnatz, her fiance's brother and now her attorney, Plaintiff brought this lawsuit based on her purported belief that the "rebuilds tooth enamel" claim is deceptive. (*Id.* at 8:16-17.) Although she kept the unused product, Plaintiff did not retain the receipt for her purchase of ACT Restoring and has never purchased it again. (*Id.* at 19:9-10.) She has since purchased, and is now using, Listerine Total Care. Interestingly, that product is itself the subject of a putative class action related to its claim to "restore enamel." *Bowling v. Johnson & Johnson*, Case No. 1:14-cv-03727-SAS (S.D.N.Y.).

## IV.    Lack of Classwide Damages

Plaintiff seeks damages for herself and the class under two theories: (1) that she is entitled to a full refund for her purchase of a "valueless" product; and (2) that she paid a premium for ACT Restoring because of the "rebuilds tooth enamel" claim. (Compl. ¶¶ 39, 40.)

In support of her theories, Plaintiff relies on the expert opinion of Douglas S. King, an accountant with Gleason & Associates, PC. (Pl.'s Mot. for Class Cert. Ex. G ("King Rpt.").)[1] Chattem's expert, Professor James Hughes, outlines the numerous deficiencies with this methodology for purposes of assessing classwide damages. (Expert Report of James W. Hughes, Ph.D. ("Hughes Rpt."), attached as <u>Exhibit B</u>.) First, ███████████████████████████ ████████████████████████████████████████████ ██████████████████████████ (Hughes Rpt. ¶ 8.) Second, Mr. King's oversimplified analysis makes no attempt to isolate the economic effects of the specific claim from the variety of other market factors that affect the price of the Product. (*Id.* ¶ 9.) Mr. King's methodology does not take into account individual consumer preferences, wide variations in retailer pricing, differences in product formulation (such as whether the product contains alcohol), or the effect on the price of multiple other advertising claims. (*Id.* ¶¶ 18-20, 24-25.) "Without controlling for these differences . . . he cannot isolate the alleged effect on consumers of the allegedly misleading claim." (*Id.* ¶ 31.)

## ARGUMENT AND CITATION OF AUTHORITIES

Plaintiff bears the burden of proving that class certification is appropriate and the Court must rigorously analyze that proof. *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013); *Nelson v. Mead Johnson Nutrition Co.*, 270 F.R.D. 689, 691 (S.D. Fla. 2010). "The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Behrend*, 133 S. Ct. at 1432 (internal quotations and citation omitted). For Plaintiff to meet this standard, the Court must find: (1) Plaintiff has standing; (2) the class meets each of the requirements of Rule 23(a); and (3) the class meets at least one of the requirements of

---

[1] Chattem has filed a companion motion to exclude the King Report. [Dkt. 53.]

Rule 23(b). *Bilotta v. Citizens Info. Assocs., LLC*, No. 8:13-cv-2811-T, 2014 WL 2050853, at *1 (M.D. Fla. May 19, 2014); *Nelson*, 270 F.R.D. at 691.

"Under Rule 23(a), a class may be certified only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." *Britt Green Trucking, Inc. v. Fedex Nat'l, LTL, Inc.*, No. 8:09-cv-445-T-33TBM, 2013 WL 6051752, at *3 (M.D. Fla. Nov. 15, 2013) (citing Fed. R. Civ. P. 23(a)). An additional implied prerequisite of Rule 23 is ascertainability of the class. *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1303 (11th Cir. 2012).

Plaintiff fails to meet any of the Rule 23(a) prerequisites, and she has not shown that the proposed class satisfies the additional requirements of Rule 23(b). Plaintiff seeks to certify her class under Rule 23(b)(2), which is appropriate only when injunctive or declaratory relief is the predominant remedy requested for class members. *Murray v. Auslander*, 244 F.3d 807, 812 (11th Cir. 2001). She also seeks to certify the class under Rule 23(b)(3), which requires that common questions "predominate over questions affecting only individual members and that class resolution is "superior to other methods for fair and efficient adjudication of the controversy." *Amchen Prods. v. Windsor*, 521 U.S. 591, 615 (1997).

Plaintiff seeks to certify a class of Florida purchasers of ACT Restoring Mouthwash from 2010 through the present. Following the Court's Order partially granting Chattem's motion to dismiss, the Plaintiff now seeks class relief under two legal theories: (1) the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") and (2) unjust enrichment. Plaintiff's claims have no legal merit because ACT Restoring does exactly what it claims to do—"rebuilds tooth

enamel." Moreover, Plaintiff did not pay a "price premium" for the Product because (1) price was never a factor in her purchasing decision and (2) ████████████████████████████ ████████████████████████████████ Even setting aside the deficiencies of her claims, Plaintiff has not met her burden of demonstrating that her claims are appropriate for class certification, either for injunctive relief or for damages, under Rules 23(a) and 23(b). *See Bilotta*, 2014 WL 2050853, at *1 (plaintiff bears burden of affirmatively showing that all class certification prerequisites are met). Her Motion for Class Certification should be denied.

I.    **The Proposed Class Should Not Be Certified Because There Is No Commonality and Individual Issues Predominate as to Liability.**

To satisfy the commonality requirement, Plaintiff must prove, <u>not merely plead</u>, that the Court can resolve each of the class claims in one stroke. *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011). Her burden on predominance under Rule 23(b)(3) is even more demanding, requiring that she prove that issues common to the class predominate over individual issues. *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997). The question is whether, by proving her own case, Plaintiff has necessarily proven the cases of each of the purported class members. *Rollins, Inc. v. Butland*, 951 So. 2d 860, 870 (Fla. 2d DCA 2006).

A.    **Plaintiff Has Not Demonstrated, at Minimum, that a Reasonable Consumer would be Deceived by the Phrase "Rebuilds Tooth Enamel."**

ACT Restoring does, in fact, "rebuild" tooth enamel. Nonetheless, Plaintiff contends that she was deceived by this statement, based on a narrow and subjective understanding of the word "rebuilds." She argues that to prevail on her FDUTPA claim on behalf of the class, she need only show that a reasonable consumer would likewise be deceived. In an effort to show how easily she can prove her case for the class, Plaintiff oversimplifies the FDUTPA analysis by trying to

boil it down to this single question—whether "rebuilds tooth enamel" is likely to deceive a reasonable consumer. Florida law is not so easily condensed.

Federal courts ruling on matters of state law must look for guidance to the supreme court of the relevant state, here, Florida. *See West v. AT&T*, 311 U.S. 223, 236-37 (1940); *LeFrere v. Quezada*, 582 F.3d 1260 (11th Cir. 2009) ("Only where no state court has decided the point in issue may a federal court make an educated guess as to how that state's supreme court would rule.") The Florida Supreme Court has never set forth the elements of a FDUTPA claim. *Nelson*, 270 F.R.D. at 692. Florida appellate courts agree that a FDUTPA claim has at least three elements: (1) a deceptive act or practice; (2) causation; and (3) actual damages. *Rollins*, 951 So. 2d at 869. The lower courts are not in unison on the issue of whether individual reliance is required to certify a class action, however, and the supreme court has been silent on the issue. *Compare Davis v. Powertel, Inc.*, 776 So.2d 971, 974 (Fla. 1st DCA 2000) *with Phillip Morris USA Inc. v. Hines*, 883 So. 2d 292, 294-95 (Fla. 4th DCA 2003) *and Smellie v. Nestle Healthcare Nutrition, Inc.*, No. 1031562, 2012 WL 10816428 (Fla. Cir. Ct. Feb. 15, 2012) (order denying class certification). The Eleventh Circuit has held that actual reliance of each individual consumer is not required so long as Plaintiff can prove "whether that allegedly deceptive conduct would deceive an objective reasonable consumer." *Fitzpatrick v. General Mills, Inc.*, 635 F.3d 1279, 1282-83 (11th Cir. 2011). Since then, however, the Eleventh Circuit has affirmed denial of class certification where differences in purchasing circumstances created many individualized factual and legal issues under FDUTPA. *Webber v. Esquire Deposition Servs., LLC*, 439 F. App'x. 849, 851 (11th Cir. 2011) (per curiam).

Indeed, courts have expressed doubt that *Fitzpatrick* is an accurate statement of Florida law. *See, e.g., In re Sears, Roebuck & Co. Tools Marketing and Sales Practices Litig.*, No. MDL-

1703, 2012 WL 1015806, at * 9 (N.D. Ill. Mar. 22, 2012) (collecting authorities and applying Florida law). Florida appellate courts appear to require some element of individualized reliance, albeit treating the issue as one of causation, and have refused to certify classes that necessitate individualized causation inquiries. *See, e.g., Rollins*, 951 So. 2d at 872; *Phillip Morris*, 883 So. 2d at 294-95 (questioning whether *Davis* gives fair consideration to the principle of causation). As a Florida court held in *Rollins*, allowing proof by common schemes and business practices "is inconsistent with established Florida precedent, but it also has the potential to deny [the defendant] substantive due process of law." 951 So. 2d at 873-74. Therefore, "each member of the putative class must establish that the [defendant] committed a deceptive act or unfair practice that caused their actual loss." *Id.* at 874. As another Florida court held, common proof of a nationwide marketing campaign or universal labeling is simply not enough to satisfy causation for an entire class. *Smellie*, 2012 WL 10816428, at *15. To hold otherwise "in the name of the general principle that the FDUTPA does not require reliance would, in effect, remove its causation requirement." *In re Sears*, 2012 WL 1015806, at *11.

Even if *Fitzpatrick* is an accurate statement of Florida law, however, Plaintiff's class cannot be certified because it includes individual purchasers who indisputably do not have a FDUTPA (or any other) claim. Assuming *Fitzpatrick* dispenses with an individualized reliance requirement under FDUTPA, it does not permit certification of classes that include purchasers with no legal claim. The Eleventh Circuit in *Webber* recognized that notwithstanding *Fitzpatrick*, class certification remains inappropriate where differences in purchasing circumstances create individualized factual and legal issues under FDUTPA. 439 F. App'x. at 851. And the problems in this case are far more fundamental than different purchasing circumstances. In this case, Plaintiff's proposed class includes purchasers who bought the Product, █████████████ before

and after the claim was added to the label. Regardless of the circumstances, loyal brand customers who purchased the Product ███████████ before and after the label change do not have a claim. Nothing in *Fitzpatrick* permits certification of a class that includes purchasers without a legal claim.

Additionally, even if *Fitzpatrick* answered the class certification question, Plaintiff's class should not be certified under its reliance standard. The Court in *Fitzpatrick* held that a FDUTPA class may be certified where the plaintiff can prove the alleged misrepresentation "would deceive an objective reasonable consumer." 635 F.3d at 1282-83; *see also Pop's Pancakes, Inc. v. NuCO2, Inc.*, 251 F.R.D. 677, 686 (S.D. Fla. 2008) (even if reliance is presumed, reasonableness of that reliance will vary by class members). Plaintiff cannot make that showing in this case. The accepted Dictionary definitions of "rebuild" range from "to build (something) again after it has been damaged or destroyed" to "to make important improvements or changes in something." Merriam-Webster, at www.merriam-webster.com (last visited Oct. 10, 2014). Synonyms include "repair," "reinforce," "restrengthen" and "restore." Dictionary.com (last visited Oct. 10, 2014). Plaintiff asks the Court to accept that every objective, reasonable consumer adheres to her rigid understanding of "rebuilds tooth enamel." Common sense suggests this is not the case, and this assertion is far too weak a foundation upon which to certify a class. *See Smellie*, 2012 WL 10816428, at *13.

**B.     Plaintiff's Unjust Enrichment Claim Suffers from the Same Deficiencies.**

To prevail as to unjust enrichment, Plaintiff and the class must prove: (1) that they each conferred a benefit on Chattem; (2) that Chattem voluntarily accepted and retained the benefit; (3) under circumstances that make it inequitable for Chattem to keep that benefit. *Porsche Cars N.A., Inc. v. Diamond*, 140 So. 3d 1090, 1100 (Fla. 3d DCA 2014). Because a claim for unjust

enrichment "requires examination of the particular circumstances of an individual case" to determine whether inequity would result, *id.*, claims for unjust enrichment are not appropriate for class treatment, *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1274 (11th Cir. 2009).

## II.    Plaintiff Has Not Met Her Burden Of Showing That Damages Can Be Calculated On A Class-Wide Basis.

Even putting aside that ACT Restoring does what it claims to do; that neither Plaintiff nor any other member of the putative class has suffered injury as a result of purchasing the Product; and the other deficiencies under Rules 23(a) and 23(b), Plaintiff is not entitled to class certification because she cannot show damages are capable of measurement on a class-wide basis. Since the Supreme Court's 2013 ruling in *Comcast v. Behrend*, Plaintiff can no longer meet her burden on class certification by asking the court to worry about damages later. Instead, a necessary component of the court's rigorous analysis on class certification must be an assessment of whether damages can be measured on a class-wide basis. *Behrend*, 133 S.Ct. at 1432 (2013); *Bussey v. Macon Cnty. Greyhound Park, Inc.*, 562 Fed. App'x. 782, 791 (11th Cir. 2014) (per curiam). Plaintiff has not met her burden of establishing a viable class-wide methodology, and therefore, individual damages issues will predominate under Rule 23(b)(3).

Under the FDUTPA, a plaintiff is entitled to recover actual damages. Fla. Stat. 501.211. The standard for determining actual damages is generally defined as the difference in the market value of the product in the condition in which it was delivered and its market value in the condition in which it should have been delivered. *Rollins*, 951 So. 2d at 869. A narrow exception to this established standard occurs where the alleged defect renders the product valueless, entitling the plaintiff to the full purchase price. *Id.*  Plaintiff contends that she and the class are entitled to a full refund of the purchase price or, in the alternative, that she and the class should receive the "premium" they paid. Neither theory is capable of reliable classwide proof.

A.    **The Full Purchase Price is Not an Accurate Measure of Damages.**

Plaintiff's full refund theory does not follow from her liability theory, violating *Comcast*. 133 S.Ct. at 1435. For ACT Restoring to be valueless to every class member, it must follow that not a single class member received <u>any</u> benefit from the product. *In re POM Wonderful LLC*, No. ML10-02199, 2014 WL 1225184, at *3 n.2 (C.D. Cal. Mar. 25, 2014). Plaintiff does not contend this because she cannot – her own testimony demonstrates the fallacy of this argument. Plaintiff testified that she was looking primarily for an anti-cavity mouthwash when she purchased the Product, and she does not dispute that ACT Restoring is an anti-cavity. (Foster Dep. at 17:6-8.) Plaintiff got the primary benefit she was looking for. (*Id.* at 43:20-25.) She also was looking for a product that freshened breath. (*Id.* at 16:9-11.) She does not refute that ACT Restoring delivered that value as well. Likewise, each of the class members received something of value when they purchased ACT Restoring—be it cavity protection, fresh breath, or some other benefit. For this reason, the full refund model is not an acceptable measure of damages in the context of consumer goods like ACT Restoring. *Id.* at *3; *see also Werdebaugh v. Blue Diamond Growers*, Case No. 12-CV-2724-LHK, 2014 WL 2191901, at *22 (N.D. Cal. May 23, 2014). Moreover, Plaintiff cannot render ACT Restoring "valueless" simply by declaring, without authority, that ACT Restoring was "misbranded." Of course, Chattem contests that the Product is misbranded. Setting that aside, Plaintiff has cited no authority for this proposition and Chattem has not identified any case in which a court extended the limited exception this far. Plaintiff's "misbranding" argument is nothing more than a transparent attempt to drive up classwide damages. It is not supported by sound factual or legal authority.

B.    **Plaintiff Has Not Demonstrated a Viable Methodology for Calculating a "Price Premium."**

Although the price premium theory has been recognized in Florida, simply invoking the theory is insufficient to establish a viable class-wide damages methodology.[2] *See In re Sears, Roebuck & Co. Tools Marketing and Sales Practice Litig.*, 2012 WL 1015806, at \*11, 12. Courts have consistently rejected flawed price premium models in Florida and in consumer good class actions. *See, e.g., Smellie*, 2012 WL 10816428, at \*18; *Werdebaugh*, 2014 WL 2191901, at \*23; *In re POM Wonderful*, 2014 WL 1225184, at \*5; *In re Sears, Roebuck & Co. Tools Marketing and Sales Practice Litig.*, 2012 WL 1015806, at \*11, 12. A "price premium" theory runs afoul of *Comcast* where an expert fails to link the alleged price differential to the allegedly deceptive statements or control for other reasons why comparable products may have different prices. *Blue Diamond*, 2014 WL 2191901, at \*23; *see also Algarin v. Maybelline, LLC*, 300 F.R.D. 444, 459-60 (S.D. Cal. 2014) (plaintiff must show that damages stemmed from defendant's actions that created the liability). "To establish that any difference in price is attributed solely to the alleged misrepresentation, the Court must use a [comparable] product, exactly the same but without the [allegedly misleading or deceptive] claim. As [the defendant] stated, the Court would have to control and neutralize all other product differences. Such a task is nearly impossible as no two products are completely identical." *Algarin*, 300 F.R.D. at 460. The model also is untenable where the named Plaintiff, as here, testifies that price is not an important factor in her purchasing decision. *Blue Diamond*, 2014 WL 2191901, at \*23. (Foster Dep. at 16:17-24.)

Here, Plaintiff contends that she and the class have been economically damaged in the amount of the premium price charged for ACT Restoring and attributable to the "rebuilds tooth enamel" claim. (Compl. ¶ 40.) In support, she relies on expert testimony from an accountant. He posits a superficial damages methodology whereby he would consider the per ounce price

---

[2]To the extent Plaintiff attempts to assert a "price inflation" or "fraud on the market" model of damages, that theory has been rejected in consumer class actions. *Prohias v. Pfizer, Inc.*, 485 F. Supp. 2d 1329, 1337 (S.D. Fla. 2007) (rejecting "price inflation" theory of damages as "too speculative" to show injury for purposes of Article III).

charged for ACT Restoring against the per ounce charge of other, unspecified products. (King Rpt. at 2-3.) He would do this via an analysis of pricing found on the internet, attributing the full "premium" he calculates to the "rebuilds tooth enamel" claim. (*Id.*)

As Chattem's expert explains in great detail, several significant flaws in this methodology render it unworkable as a classwide damages methodology. (Hughes Rpt.) First, Plaintiff's expert ignores the natural price comparison – between ACT Restoring before the product carried the "rebuilds tooth enamel" claim and after. (*Id.* ¶ 8.) Perhaps this is because

███████████████████████████████████████████████████

████████████████████. Second, the methodology ignores a complicated and dynamic pricing structure involving many manufacturer and retailer discounts and regional price differences. For example, a purchaser of ACT Restoring can download a $1 coupon from Chattem's website, thereby eliminating with one discount the entire claimed price premium. (*Id.* ¶ 29.) Third, the analysis inappropriately attributes any price premium to the "rebuilds tooth enamel" claim, failing to account for the multiple reasons a consumer chooses one product over another. (*Id.* ¶ 9.) This ignores the critical question: why that price difference exists. *Blue Diamond*, 2014 WL 2191901, at *23. Those variations in motivation alone create a multitude of individualized fact inquiries that threaten to overcome any potential class commonalities. For this reason, Chattem moves separately to exclude the King report based on the significant flaws in his damages methodology. Absent a coherent and reliable damages methodology set forth by a qualified expert, Plaintiff has no competent damages evidence and cannot meet her burden.

## III. Plaintiff Claims Are Not Typical.

"[T]ypicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." *Vega*, 564 F.3d at 1275. If the class representative

is subject to unique defenses, her claim is not typical of the class under Rule 23(a)(3). *Hively v. Northlake Foods, Inc.*, 191 F.R.D. 661, 668 (M.D. Fla. 2000). While typicality does not require all the class members to suffer the same injury as the named plaintiff, typicality does require all class members to suffer some injury. *In re Sears Roebuck & Co. Tools, Marketing, and Sales Practices Litig.*, 2007 WL 4287511, at *7.

ACT Restoring, and the ACT family of products, had a large following before ACT Restoring added the "rebuilds enamel" claim. ACT Restoring sales were substantial prior to the 2013 label change and the time that Plaintiff bought the product. (Pl.'s Mot. for Class Certif. Ex. A at CHA-000660.) ███████████████████████ (*Id.*) ████████ ████████████████████████████████ Most people, therefore, are not like Ms. Foster. The vast majority of ACT customers purchased the product prior to the changed label, continued to purchase it after the changed label, and ████████████████████████ ████████████.

Moreover, even assuming Plaintiff could overcome the significant flaws with her proposed classwide damages theory and methodology, she has proven herself to be atypical of the class on the FDUTPA required element of damages. Plaintiff testified unequivocally that she does not shop for mouthwash based on price and did not do so here. (Foster Dep. 16:17-24, 21:14-20, 27:25-28:2, 42:15-15.) She has no clear idea what she paid for ACT Restoring, whether other products on the shelf were cheaper, or what she subsequently paid for the Listerine Total Care product she purchased next. (*See id.*) She also testified that the primary benefit she sought with a mouthwash was its anticavity benefits, not its ability to "rebuild tooth enamel." (*Id.* at 17:6-8.) Plaintiff does not refute that sodium fluoride is an anti-cavity, or that ACT Restoring contains this active ingredient. Thus, even if her experts could show that Chattem charged a

premium, she cannot demonstrate that she herself paid a price premium based exclusively on the "rebuilds tooth enamel" claim. Further, she cannot show that the product was "valueless" to her because she received the primary benefit she sought – an anti-cavity. Rather than demonstrate typicality, Plaintiff's testimony merely demonstrates the highly fact-intensive inquiries that will be required should the Court certify her proposed class.

Additionally, Plaintiff is atypical of her proposed Rule 23(b)(2) class because she does not have individual standing to pursue the injunctive relief she seeks on behalf of the class. *Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1287 (11th Cir. 2001). A required element for Article III standing on an injunctive claim is that the Plaintiff show a real and immediate threat of future injury. *See Marty v. Anheuser-Busch Cos., LLC*, --- F. Supp. 2d ----, 2014 WL 4388415, at *17 (S.D. Fla. Sept. 5, 2014). This is true even if FDUTPA does not require such a showing: "[T]he plaintiff[] cannot rely on the text of a state statute to confer standing to seek injunctive relief in federal court. The core component of standing is derived directly from the Constitution . . . and the requirements of Article III are the irreducible minimum . . . which a plaintiff must allege." *Id.* at *21 (internal quotations and citations omitted). Accordingly, where the named Plaintiff has not testified that she would purchase the product in the future, she cannot make the showing required to establish Article III standing. *Id.* Here, Plaintiff did not finish the ACT Restoring product she purchased, and has instead begun purchasing a competing brand. (Foster Dep. at 19:14-20:6; 16:12-13.) She has not indicated any plan to return to ACT Restoring. She therefore lacks standing to seek injunctive relief.

Plaintiff's proposed Rule 23(b)(2) class also should not be certified because Plaintiff predominantly seeks damages, not equitable relief. *See Murray*, 244 F.3d at 812. To certify a Rule 23(b)(2) class, the Court must find that any monetary relief sought is merely incidental to

the desired injunctive relief. *Id.* Incidental damages are those that automatically flow directly from the injunctive remedy, <u>not</u> individualized damages related to the class members' specific personal injury. *Id.* It is evident from Plaintiff's complaint and her class certification brief that the predominant relief she seeks is a full or partial refund of the Product purchase price. In fact, in her class certification argument on this issue, Plaintiff never even specifies the injunctive or declaratory relief she seeks on behalf of the class. (Pl.'s Mot. for Class Certif. at 18.) And, as argued above, the requested damages are highly individualized, requiring assessment of the specific details of each proposed class member's purchase.

## IV.     Plaintiff's Proposed Class Is Not Ascertainable.

In the Eleventh Circuit, class members must be ascertained "by reference to objective criteria." *Bussey*, 562 F. App'x. at 787. With increasing frequency, courts are denying certification of classes involving inexpensive consumable goods where accurate purchasing records are unavailable. *See, e.g., Carrera v. Bayer Corp.*, 727 F.3d 300 (3d Cir. 2013) (involving putative Florida class); *Karhu v. Vital Pharm., Inc.*, No. 13-60768, 2014 WL815253, at * 3 (S.D. Fla. Mar. 3, 2014) (holding proposed class not ascertainable where purchasers had no proof of purchase, there was no practical means of verifying class membership, and court found sworn statement was not enough); *Algarin*, 300 F.R.D. at 455; *In re POM Wonderful LLC*, 2014 WL 1225184, at *6; *Sethavanish v. ZonePerfect Nurtition Co.*, No. 12-2907-SC, 2014 WL 580696, at *6 (N.D Cal. Feb. 13, 2014) (nutrition bars); *In re Phenylpropanolamine (PPA) Prods. Liability Litig.*, 214 F.R.D. 614, 617-20 (W.D. Wash. 2003). Such proposed classes pose administrative difficulties and, more importantly, due process concerns for defendants, who are unable to verify claimed class membership. *Carrera*, 727 F.3d at 307. This concern is especially prominent where, as here, the class representative herself cannot accurately recall the details of

18

her purchase. *Id.* A plaintiff seeking class certification must prove a "reliable, administratively feasible" option for ascertaining class membership, which cannot simply involve a "potential class member's say so." *Id.* If she cannot do so, this issue alone justifies denial of a class certification motion. *Karhu*, 2014 WL 815253, at *3; *see also Stalley v. ADS Alliance Data Sys., Inc.*, 296 F.R.D. 670, 680 (M.D. Fla. 2013) (finding that proposed class was not clearly ascertainable and, therefore, class certification was inappropriate).

ACT Restoring is an inexpensive consumable good. Like Plaintiff, the vast majority of purchasers are unlikely to have retained receipts or recall the specific details of their purchases. Because Chattem's sales are made to wholesalers and large retail chains at a national level, Chattem has no way of verifying individual consumer purchases at the retail level. *See Algarin*, 300 F.R.D. at 455-56 (where purchasers did not retain receipts and defendant did not maintain master purchaser list, class was not ascertainable). The only method for ascertaining a purported class member's status would be to take that individual at his/her word. As explained in *Carrera*, this would be improper for two reasons. First, taking affiants at their word would deprive Chattem of its due process right to challenge the allegations against it. Second, this would permit fraudulent claims and create significant administrative burdens—dangers Plaintiff clearly recognizes through her attempt to assure the Court that the dangers can be managed. Plaintiff's class definition casts such a wide net that inappropriate potential class members will undoubtedly be captured.

## V.       Class Treatment Is Not A Superior Method of Adjudicating the Claims.

A class action must be "superior to other available methods for fairly and effectively adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Denial of certification is warranted where a proposed class would necessitate expensive and time-consuming mini-trials on

individualized issues. *In re Motions to Certify Classes Against Court Reporting Firms*, 715 F. Supp. 2d 1265, 1276 (S.D. Fla. 2010). As outlined above, to fully protect Chattem's due process rights, a number of key issues will require individualized proof. Class certification is improper for this reason.

## CONCLUSION

Because Plaintiff has failed to meet her burden of showing that class certification is proper, Chattem asks that the Court deny her motion for class certification.

Respectfully submitted, October 16, 2014.

s/ Eileen H. Rumfelt
C. Crews Townsend *(pro hac vice)*
Eileen H. Rumfelt *(pro hac vice)*
Laura Ashby *(pro hac vice)*
**MILLER & MARTIN PLLC**
Suite 1000, Volunteer Building
832 Georgia Avenue
Chattanooga, TN 37402-2289
Phone (423) 756-6600
Fax (423) 785-8480
ctownsend@millermartin.com
erumfelt@millermartin.com
lashby@millermartin.com

**Attorneys for Defendant Chattem, Inc.**

Fredrick H.L. McClure, FL Bar 147354
fredrick.mcclure@dlapiper.com
Amanda E. Reagan. FL Bar 92520
amy.reagan@dlapiper.com
Christopher Young *(pro hac vice)*
Christopher.young@dlapiper.com
**DLA PIPER LLP (US)**
100 North Tampa, Suite 2200
Tampa, FL 33602-5809
Tel: (813) 229-2111
Fax: (813) 229-1447

## CERTIFICATE OF SERVICE

I hereby certify that on <u>October 16, 2014</u>, a copy of the foregoing was served via electronic ECF notification upon all counsel of record identified below.

## SERVICE LIST

Joshua H. Eggnatz, Esq.
Fla. Bar. No.: 0067926
THE EGGNATZ LAW FIRM, PA.
5400 S. University Drive, Suite 413
Davie, FL 33328
Tel: (954) 889-3359
Fax: (954) 889-5913
JEggnatz@EggnatzLaw.com

*Trial Counsel for Plaintiff and the Proposed Class*

*By:* <u>Eileen H. Rumfelt</u>